UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 APR -3  AM 11: 05

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Case No. 2:24-cr-00036 – 1 |
| ) | |
| JOSE MERINO-LOPEZ, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**
(Doc. 60)

Defendant Jose Merino-Lopez is charged in a three-count Superseding Indictment with using a facility of interstate commerce to knowingly persuade, induce, entice, or coerce a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b); traveling interstate with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b); and knowingly possessing child pornography, one image of which involved a minor less than twelve years of age, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2).

Defendant moves to suppress all evidence seized from a Samsung Galaxy S22 cell phone (the "Cell Phone") seized in Albany, New York, on October 18, 2023. (Doc. 60.) The government opposed Defendant's motion on December 22, 2025. (Doc. 61.) The court held a hearing on February 2, 2026, at which Department of Homeland Security ("DHS") Homeland Security Investigations ("HSI") Special Agent Taylor Ward testified. The court granted Defendant leave to file supplemental briefing. Defendant filed supplemental briefing on February 16, 2026, (Doc. 71), and the government responded on March 2, 2026, at which time the court took the motion to suppress under advisement. (Doc 72.)

Defendant is represented by Lisa B. Shelkrot, Esq. The government is represented by Assistant United States Attorneys Eugenia A. Cowles.

I.      **Findings of Fact.**

Based on the evidence presented, the court makes the following findings of fact.

On September 9, 2023, a fourteen-year-old female ("MV1") reported to the Colchester Police Department ("CPD") that she had been sexually assaulted earlier that day by an adult male. A medical exam allegedly revealed the presence of semen in MV1's vagina. MV1 provided law enforcement with the telephone number (the "Subject Number") she used to communicate with the suspect. AT&T records revealed that the Subject Number belonged to Defendant and was associated with the Cell Phone.

With the consent of MV1 and her mother, CPD reviewed Facebook and Instagram messages between MV1 and Defendant. The messages revealed that MV1 and Defendant began communicating on July 5, 2023. On that day, Defendant asked MV1 where she lived, and she told him she lived in Burlington, Vermont. She asked him how old he was, to which he answered twenty-six. When Defendant asked how old MV1 was, she told him she was fourteen.

On September 1, 2023, Defendant asked MV1 if he could visit her in Vermont, and on September 2, 2023, he told MV1 he was coming to see her and asked where they could meet. Defendant and MV1 met at the University Mall in South Burlington, Vermont. Later that day, Defendant sent MV1 three pictures of the two of them together at an area that appears to be the Burlington waterfront and boardwalk.

The following day, Defendant asked MV1 if she wanted him to visit again. On September 5, 2023, he asked when he could see her next. Over the next few days, Defendant sent MV1 messages about wanting to hug and kiss her. Defendant's messages allegedly became increasingly romantic and "grooming" in nature. On the morning of September 9, 2023, Defendant and MV1 arranged to meet at Airport Park in Colchester, Vermont. "At approximately 5:22 p[.]m[.], [Defendant] messaged MV1 saying 'baby, what are you doing?' followed by 'who are you with?' In response, MV1 wrote: 'nobody' and 'I'm alone.' At approximately 10:24 p[.]m[.], [Defendant] messaged MV1 saying 'good night[,] love. [Blowing kiss emoji][Heart emoji].'" (Doc. 60-1 at 7-8, ¶ 10) (final two alterations in original).

On October 5, 2023, the State of Vermont charged Defendant with two felonies, Aggravated Sexual Assault of a Child and Lewd and Lascivious Conduct with a Child,

2

and issued an extraditable warrant for his arrest. On October 13, 2023, the State of Vermont, Chittenden County Court issued a search warrant requiring AT&T to provide GPS and cell site location data for the Subject Number associated with the Cell Phone.

On October 18, 2023, location information from the search warrant confirmed the presence of the Cell Phone in the area of a basketball court in Washington Park in Albany, New York. HSI Special Agents Taylor Ward and Josh Otey, accompanied by another HSI Special Agent and two New York State Police officers, located and approached Defendant on the basketball court and asked if he would speak with them. Defendant agreed and stepped off the basketball court. His conversation with Special Agents Ward and Otey took place on a bench approximately thirty to fifty feet from the edge of the basketball court.

During law enforcement's approximately sixteen-minute conversation with Defendant, he acknowledged conversing with a female from Vermont over Instagram and traveling to Vermont twice to meet with her. He claimed he did not recall the dates of his visits. He identified the female by her first name and advised he believed she was seventeen years old. He repeatedly denied having sexual intercourse with her. At the end of the conversation, Defendant was asked about the Cell Phone:

> **Special Agent Otey:** Okay. Do you have your phone with you here?
>
> **Defendant:** Uh, not with me
>
> **Special Agent Otey:** Where is it?
>
> **Defendant:** Um. It's over there by the basketball court.
>
> **Special Agent Otey:** Okay. So the other thing we wanted to do was just ask your consent to search your phone. I have a computer program with me that I'm able to make a copy of your phone. Uh, with your consent, we can do that. We can look at the records we have versus the records that you have on your phone to help, uh, that stuff line up or not. So if you would consent to a search of your phone, we'd ask for you to sign some consent forms tonight to do that.
>
> **Defendant:** I would have to talk to my, uh, lawyer.
>
> **Special Agent Otey:** Okay. That's fine. The other option is we would then detain your phone and then apply for a search warrant from a judge, but I wanna give you the option because that process can take a little longer,

3

> whereas with consent I can do it tonight and have that done. So that's why I just wanted to give you the opportunity and ask you that, and the choice is completely up to you. I just wanna explain how it works both ways.
>
> **Defendant:** Okay. Um, you said I'm not under arrest, so I would like to talk to my, uh, lawyer.
>
> **Special Agent Otey:** Well, that's fine. So these gentlemen here then can talk to you about what -- what happens from here at this point.

(Doc. 61-5 at 15:19-16:23.) When the conversation concluded, New York State Police officers arrested Defendant pursuant to the extraditable warrant for his arrest. The police officers gathered his personal belongings, including the Cell Phone, from the edge of the basketball court. At the time, there was no warrant for the seizure of the Cell Phone.

On October 25, 2023, Special Agent Ward applied for and obtained a federal search warrant authorizing the search of the Cell Phone "with assigned telephone number [Subject Number], which was seized from [Defendant] on October 18, 2023" (the "October Warrant"). (Doc. 60-3 at 3.) Special Agent Ward's affidavit in support of the October Warrant stated that the Cell Phone "was seized incident to arrest." (Doc. 60-1 at 9, ¶ 10.) The October Warrant authorized the seizure of the following items from the Cell Phone:

> contraband, fruits, instrumentalities, and evidence of the use of a facility of interstate or foreign commerce to persuade, entice, or induce a minor to engage in sexual activity for which a person could be held criminally responsible, in violation of 18 U.S.C. § 2422(b), and travel with intent to engage in unlawful sexual contact, in violation of 18 U.S.C. § 2423(b), committed by [Defendant]:
>
> > a. Communications with minors, including MV1;
> >
> > b. Images or videos depicting MV1;
> >
> > c. Images or videos depicting [Defendant];
> >
> > d. Information, correspondence, records, documents, or other materials constituting evidence of or pertaining to items "a" through "c" above . . ., including but not limited to: [a list of types of electronic data.]

(Doc. 60-3 at 4.) It did not include a temporal limitation on the search.

According to the government, when an HSI digital forensic analyst reviewed the Cell Phone under the October Warrant, he "noted a video within a WhatsApp group chat that appeared to contain CSAM [(child sexual abuse material)]." (Doc. 61 at 3.) "The analyst stopped his analysis" and, on October 31, 2023, informed Special Agent Ward of his findings. *Id.*

On November 2, 2023, Special Agent Ward applied for and obtained a second search warrant which authorized a broader search for CSAM on the Cell Phone (the "November Warrant"). The application for the November Warrant incorporated Special Agent Ward's affidavit in support of the October Warrant and provided information about the HSI digital forensic analyst's discovery of a CSAM video from a June 4, 2020 WhatsApp group chat. It also included Special Agent Ward's knowledge of the habits of CSAM collectors in light of his experience and training, "including the propensity of CSAM traders to possess and maintain CSAM materials they exchanged in secure locations, including . . . in a personal computer or electronic device." *Id.* at 3-4. The November Warrant authorized the seizure of the following items from the Cell Phone:

> contraband, fruits, instrumentalities, and evidence of possession, receipt, and distribution of child pornography, in violation of 18 U.S.C. §§ 2252 and 2252A:
>
>> a. Child pornography;
>>
>> b. Child erotica;
>>
>> c. Visual depictions of minors engaged in sexually explicit conduct;
>>
>> d. Information, correspondence, records, documents[,] or other materials constituting evidence of or pertaining to items "a" through "c" above . . ., including but not limited to: [a list of types of electronic data.]

(Doc. 60-4 at 3.) It did not include a temporal limitation on the search.

Upon searching the Cell Phone pursuant to the November Warrant, HSI agents found material that they contend constitutes CSAM.

## II.   Conclusions of Law and Analysis.

### A.   Whether the Cell Phone Was Lawfully Seized.

It is undisputed that there was no warrant for the seizure of the Cell Phone. For that reason, Defendant asserts the seizure of it was unlawful and evidence derived from it

must be suppressed. The government claims that three exceptions to the warrant requirement justify the warrantless seizure of the Cell Phone: (1) search incident to arrest; (2) plain view; and (3) exigent circumstances. If none of these exceptions apply, it argues that the good faith exception to the exclusionary rule renders suppression unwarranted.

### 1.    Whether the Search Incident to Arrest Exception Applies.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Arizona v. Gant*, 556 U.S. 332, 338 (2009). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Id.* A seizure is "incident to arrest" only if it is "substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Shipley v. California*, 395 U.S. 818, 819 (1969) (quoting *Stoner v. California*, 376 U.S. 483, 486 (1964) (internal quotation marks omitted)). For this reason, "a police officer who makes a lawful arrest may conduct a warrantless search of [only] the arrestee's person and the area 'within his immediate control.'" *Davis v. United States*, 564 U.S. 229, 232 (2011) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)).

The government does not dispute that the Cell Phone was not on Defendant's person nor within his reach at the time of his arrest. Instead, it argues that Defendant, due to "the busy, public location" of the basketball court, "had placed his belongings where he could keep track of them during his game[]" and therefore his belongings, including the Cell Phone, "remained within his 'immediate control' at the time of his arrest and were thus appropriately seized incident to arrest[.]" (Doc. 61 at 6.)

The search incident to arrest exception depends upon the physical proximity of the item to be seized, not whether an individual is aware of where an item is located. "Where

the item to be searched is not within reasonable reach of the person arrested, the rationale for application of this exception is absent." *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993). In *Perea*, the Second Circuit reasoned that because the item searched, a duffel bag, was in the trunk of a cab when agents stopped the vehicle, there was "no basis on which it could properly be deemed to have been within [the defendant's] reasonable reach at the time of the stop." *Id.* Like the defendant in *Perea*, Defendant was aware of where the Cell Phone was located, but the government has not established that it was within his reach at the time of his arrest. Accordingly, the warrantless seizure of the Cell Phone is not justified as a search incident to arrest.

### 2.    Whether the Plain View Exception Applies.

"The 'plain view' doctrine is a recognized exception to the Fourth Amendment requirement of a warrant for seizures." *United States v. Delva*, 858 F.3d 135, 149 (2d Cir. 2017). "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Id.* (citing *Horton v. California*, 496 U.S. 128, 133 (1990)) (internal quotation marks omitted).

For the plain view doctrine to apply, a law enforcement "officer must lawfully have been in the place from which the object could be seen in plain view." *United States v. Galpin*, 720 F.3d 436, 451 (2d Cir. 2013) (citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). "The plain view exception authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *United States v. Gamble*, 388 F.3d 74, 76 (2d Cir. 2004) (internal quotation marks and citation omitted). "[T]he burden of showing that the search fell within [the plain view] exception[] to the warrant requirement is on the government." *United States v. Kiyuyung*, 171 F.3d 78, 83 (2d Cir. 1999).

In this case, law enforcement officers were lawfully present at the public basketball courts. They had probable cause to seize the Cell Phone as Defendant is alleged to have used it to communicate with MV1, who provided law enforcement with the Subject Number associated with both Defendant and the Cell Phone. The government

has failed to establish, however, that the Cell Phone was in plain view at the edge of the basketball court. Special Agent Ward testified that he did not physically see the Cell Phone and he was not present when it was seized. His affidavit states only that the Cell Phone "was seized incident to arrest[,]" (Doc. 60-1 at 9, ¶ 10), and does not describe its location or position at the time of that seizure. While speaking with Special Agents Ward and Otey, Defendant did not specify the Cell Phone's location beyond mentioning, as he gestured in its direction, that it was "over there by the basketball court." (Doc. 61-5 at 15:23-15:26.) It is not clear whether the Cell Phone was visible from that location.

Based on the foregoing facts, the government has not satisfied its burden to establish that the Cell Phone was in plain view. The plain view doctrine therefore does not justify the warrantless seizure of the Cell Phone. *See United States v. Wey*, 256 F. Supp. 3d 355, 409-10 (S.D.N.Y. 2017) (holding that the plain view exception did not apply because "the [g]overnment here has not developed any evidentiary record that would allow the [c]ourt to reach such a conclusion[]").[1]

---

[1] Courts have questioned whether the plain view doctrine extends to the seizure of cell phones in plain view in public spaces based on probable cause that the phone has evidentiary value. The Eastern District of New York recently declined to apply the plain view doctrine under such circumstances, opining that to do so "would risk creating an exception for the warrantless seizure of cell phones so broad that, as a practical matter, it might entirely swallow the rule." *United States v. Chowdhury*, 2025 WL 2987917, at *18 (E.D.N.Y. Oct. 22, 2025). Relying on *United States v. Babilonia*, 854 F.3d 163 (2d Cir. 2017), in which the Second Circuit upheld "the seizure of electronic devices that officers saw when they were lawfully inside the defendant's apartment while executing an arrest warrant[,]" *Chowdhury*, 2025 WL 2987917, at *18 (citing *Babilonia*, 854 F.3d at 172), the *Chowdhury* court drew a distinction between public spaces generally and private spaces that law enforcement had justifiably intruded upon. It noted that, "[o]bviously, the officers in Chowdhury's case had the right to be standing in the street" but distinguished that "common circumstance[]" from *Babilonia*, in which "the officers had judicial authorization to search the suspect's home pursuant to a warrant." *Id.* The district court cited Supreme Court precedent that "[t]he [plain view] doctrine serves to supplement the prior justification – whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accuse[d] – and permits the warrantless seizure." *Id.* (quoting *Horton v. California*, 496 U.S. 128, 135-36 (1990)) (internal quotation marks omitted). It concluded that the plain view doctrine does not "permit the police to make warrantless seizures of electronic devices from suspects in public spaces." *Id.* This court need not resolve that issue because the government failed to establish that the Cell Phone was in plain view.

8

### 3.   Whether Exigent Circumstances Apply.

Law enforcement may conduct a warrantless search or seizure "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (internal quotation marks and alteration omitted). "[T]he need to prevent the imminent destruction of evidence" is one such exigency. *Id.* (internal quotation marks omitted). As the Second Circuit has explained:

> Police investigations commonly involve an initial seizure of a person's property for purposes of conducting a search of the contents within it. If the police have probable cause to believe that the property contains contraband or evidence of a crime and if it is necessary to seize or secure the property immediately to prevent its destruction or disappearance, the Fourth Amendment allows the police to seize or secure the property without a warrant provided that they follow up by applying to a judge for a warrant to search the property's contents. *See Illinois v. McArthur*, 531 U.S. 326, 332-34, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001); *United States v. Place*, 462 U.S. 696, 701, 103 S. Ct. 2637, 77 L. Ed. 2d 110 (1983).

> The right of the police to temporarily seize a person's property pending the issuance of a search warrant presupposes that the police will act with diligence to apply for the warrant. The Supreme Court "has upheld temporary restraints where needed to preserve evidence until police could obtain a warrant," and has never "held unlawful a temporary seizure that was supported by probable cause and was designed to prevent the loss of evidence while the police diligently obtained a warrant in a reasonable period of time." *McArthur*, 531 U.S. at 334 . . . . To the same effect, [the Second Circuit has] also ruled that "even a seizure based on probable cause is unconstitutional if police act with unreasonable delay in securing a warrant." *United States v. Martin*, 157 F.3d 46, 54 (2d Cir. 1998).

*United States v. Smith*, 967 F.3d 198, 205 (2d Cir. 2020) (emphasis omitted).

"[P]robable cause to arrest a suspect does not necessarily amount to probable cause to search his cell phone[,]" and "specific, factual allegations that tend to link the alleged criminal conduct to the" phone must be established. *United States v. Silva*, 146 F.4th 183, 190, 192 (2d Cir. 2025). Here, law enforcement officers knew that someone using the Subject Number was communicating with MV1 over Instagram and Facebook and had allegedly sexually assaulted MV1. Officers also knew the make and model of the

Cell Phone, the Subject Number associated with it, as well as its location. Because the suspected user of the Cell Phone had engaged in "grooming" type messages with MV1, and the Cell Phone's location corroborated Defendant meeting with MV1 at Vermont locations identified by MV1, there was probable cause to believe that evidence of the enticement of a minor to engage in unlawful sexual activity and travel with intent to engage in unlawful sexual conduct was present on the Cell Phone. *See, e.g., United States v. McGrain*, 2021 WL 1169195, at *3 (W.D.N.Y. Mar. 29, 2021) (finding probable cause to believe cell phone contained incriminating evidence of enticement of a minor where minor reported defendant had sent her sexually explicit messages and she had sent defendant sexually explicit images); *United States v. Grinder*, 808 F. App'x 145, 147 (4th Cir. 2020) ("[T]he officers knew that [defendant] had a cell phone and that he had used it to send incriminating text messages[.]"); *United States v. Carton*, 2018 WL 3559172, at *6 (S.D.N.Y. July 10, 2018) ("[T]he affidavit set forth comprehensive evidence both that [the defendant] owned a cell phone and used it extensively in furtherance of his crimes. [The magistrate judge] thus correctly found probable cause and issued the [w]arrant.").

Defendant contends that there was no threat of evidence destruction because he was in custody and was not in possession of the Cell Phone. This ignores the fact that if law enforcement left the Cell Phone in a public park, there was a substantial likelihood that it would be lost, stolen, or destroyed. For this reason, "objects such as . . . contraband found in a public place may be seized by the police without a warrant, because, under these circumstances, the risk of the item's disappearance or use for its intended purpose before a warrant may be obtained outweighs the interest in possession." *Place*, 462 U.S. at 701-702 (internal quotation marks and citation omitted); *see also United States v. Martinez*, 2021 WL 7159898, at *4 (E.D.N.Y. Nov. 17, 2021) (holding that exigent circumstances justified the warrantless seizure of laptop found in child pornography defendant's hotel room because, "[g]iven the nature of electronic devices, which are easily erased or destroyed, a reasonable officer would certainly believe there was an urgent need to seize the [laptop] to prevent any destruction of evidence[]"); *United States v. Harris*, 2025 WL 1078390, at *11 (S.D.N.Y. Apr. 10, 2025) (finding exigent

10

circumstances to seize defendant's cell phone in part due to "officers' reasonable perception that [defendant] had lied to them during the interview"). Law enforcement's ability to track the location of the Cell Phone does not alter this risk. *See, e.g., Martin,* 157 F.3d at 53 (finding risk of loss or destruction of suspected contraband in a UPS package constituted exigent circumstance that justified warrantless seizure of package prior to delivery even though law enforcement had package's tracking number); *United States v. Okparaeka,* 2018 WL 3323822, at *6 (S.D.N.Y. July 5, 2018) (same).

By seizing the Cell Phone and applying for a search warrant for its contents, law enforcement acted squarely within Supreme Court precedent because where they "have probable cause to believe that a container holds contraband or evidence of a crime, but have not secured a warrant, . . . the Fourth Amendment . . . permit[s] seizure of the property, pending issuance of a warrant to examine its contents, if the exigencies of the circumstances demand it[.]" *Martin,* 157 F.3d at 53 (alterations adopted) (internal quotation marks omitted) (quoting *Place,* 462 U.S. at 701).

To the extent Defendant argues that law enforcement created any exigency, that argument is misplaced. "The Supreme Court has clearly established that police cannot use the exigent circumstances exception if they 'create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment.'" *Felix v. City of New York,* 408 F. Supp. 3d 304, 310 (S.D.N.Y. 2019) (quoting *King,* 563 U.S. at 462); *see also United States v. MacDonald,* 916 F.2d 766, 772 (2d Cir. 1990) (en banc) ("[L]aw enforcement agents may not create their own exigencies through illegal conduct.") (internal quotation marks omitted). In this case, however, law enforcement chose to lawfully arrest Defendant pursuant to an arrest warrant in a public place. They did not thereby create an exigency that violates the Fourth Amendment. Moreover, the failure to obtain a search warrant for the Cell Phone prior to Defendant's arrest does not constitute unlawful conduct.

> [L]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause. . . . Faulting the police for failing to apply for a

11

search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the Constitution.

*King*, 563 U.S. at 467 (internal quotation marks and citation omitted); *see also United States v. Cattouse*, 846 F.2d 144, 147 (2d Cir. 1988) ("[E]ven if the agents might have been able to obtain a warrant earlier in the day, their failure to do so at the first opportunity does not bar them from acting on an exigency that arises later.") (citation omitted); *Cardwell v. Lewis*, 417 U.S. 583, 595-96 (1974) ("[T]he fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.").

Because the Cell Phone would have otherwise been left in a public area and vulnerable to loss, theft, or destruction, and because the contents of the Cell Phone could have been deleted, erased, or destroyed, the seizure of the Cell Phone was justified by exigent circumstances. Thereafter, the exigent circumstances doctrine required the government to "diligently obtain[] a warrant in a reasonable period of time." *Smith*, 967 F.3d at 205 (internal quotation marks, emphasis, and citation omitted). Defendant does not argue that law enforcement's subsequent procurement of a search warrant was unreasonably delayed, and the court finds that it was not.

**B.    Whether the October Warrant Was Sufficiently Particularized.**

Defendant next argues that the October Warrant lacked particularity because it was too broad in terms of the materials it covered and did not include a temporal limitation. In response, the government asserts that "warrants for the search of digital devices . . . often require a broad stroke[]" and that the breadth of the types of files and timeframe covered by the October Warrant was tempered by the specified crimes which cabined both the search and the seizure of information related to those crimes. (Doc. 61 at 10.) It alternatively argues that, even if the October Warrant were constitutionally deficient, the good faith exception applies.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To be

12

sufficiently particularized, a warrant must: (1) "identify the specific offense for which the police have established probable cause[,]" (2) "describe the place to be searched[,]" and (3) "specify the items to be seized by their relation to designated crimes." *Galpin*, 720 F.3d at 445-46 (internal quotation marks and citation omitted). "[A] warrant is overbroad if its 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *United States v. Nejad*, 436 F. Supp. 3d 707, 725 (S.D.N.Y. 2020) (citation omitted) (alterations in original).

> The Fourth Amendment does not require a perfect description of the data to be searched and seized, however. Search warrants covering digital data may contain "some ambiguity so long as law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant." *Galpin*, 720 F.3d at 446 (internal quotation marks omitted).

*United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir. 2017) (alteration omitted), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018).

The Second Circuit has distinguished between a search warrant's breadth and its particularity, noting that the two concepts "are related but distinct." *Id.* at 102.

> A warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement. For example, a warrant may allow the government to search a suspected drug dealer's entire home where there is probable cause to believe that evidence relevant to that activity may be found anywhere in the residence. Similarly, "[w]hen the criminal activity pervades [an] entire business, seizure of all records of the business is appropriate, and broad language used in warrants will not offend the particularity requirements." *U.S. Postal Serv. v. C.E.C. Servs.*, 869 F.2d 184, 187 (2d Cir. 1989).

*Id.* (alterations in original). "[A] broad warrant allowing the government to search [the defendant's] laptop for potentially extensive evidence of" charged crimes committed using that laptop "does not offend the Fourth Amendment, as long as that warrant meets the three particularity criteria[.]" *Id.* at 102-103. In the instant case, the October Warrant identified two categories of evidence as within its scope: (1) materials related to the charged crimes and (2) materials related to communications with minors.

13

### 1.    Items Relating to the Crimes Charged.

Defendant is correct that "[a] failure to indicate a time frame could render a warrant constitutionally overbroad because it could allow the seizure of records dating back arbitrarily far and untethered to the scope of the affidavit which ostensibly provided probable cause." *United States v. Hernandez*, 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010) (alteration adopted) (internal quotation marks omitted). The Sixth Circuit, for example, has held that "[f]ailure to limit broad descriptive terms by relevant dates, when such dates are available to the police, will render a warrant overbroad." *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999). The Eleventh Circuit has similarly expressed concerns about search warrants of electronic data encompassing "virtually every kind of data that could be found in a social media account[]" and lacking a timeframe. *United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017) (declining to find whether the warrant violated the Fourth Amendment because reliance on it fell within the good faith exception).

"[D]istrict courts within the Second Circuit agree that a time frame is relevant but there is no consensus as to when one is required." *United States v. Adams*, 2015 WL 5023784, at *4 (D. Vt. Aug. 25, 2015). "Like many measures of particularity, the necessity of a temporal limitation depends on the context of the case[.]'" *United States v. Pinto-Thomaz*, 352 F. Supp. 3d 287, 306 (S.D.N.Y. 2018). In the Second Circuit, the absence of a temporal limitation is not dispositive. *See, e.g., id.* ("[A] temporal limitation is not an absolute necessity, but is only one indicium of particularity in a warrant.") (internal quotation marks and citation omitted); *Adams*, 2015 WL 5023784, at *4 ("The warrant at issue in [a possession of child pornography] case was not overbroad simply because it did not constrain the search to a particular time frame.").

The October Warrant stated the criminal offenses for which evidence was sought and the items to be searched for with sufficient precision. While the list of the types of digital files to be searched was broad, it was circumscribed by the identified crimes alleging Defendant communicated with MV1 and traveled to Vermont for the purpose of having sexual intercourse with her during the July 5, 2023 to September 9, 2023 time

14

frame. In Defendant's conversation with Special Agent Ward on October 18, 2023, he said that he met MV1 "just this year." (Doc. 61-5 at 4:42-44.)

The scope of the October Warrant was generally limited to the contraband, fruits, instrumentalities, and evidence of the identified crimes. *See United States v. Pugh*, 2015 WL 9450598, at *21 (E.D.N.Y. Dec. 21, 2015) (holding that a warrant was not overly broad when it was limited to the fruits, evidence, and instrumentalities of the crime alleged and finding that "[t]he combination of the illustrative list in Attachment B and the focus on a specific crime properly limited the warrant to the probable cause adduced in the warrant affidavit[]"). Defendant's challenge based on the lack of a temporal limitation is therefore unavailing. In the instant case, "[c]ommunications with . . . MV1" and "[i]mages or videos depicting MV1[,]" (Doc. 60-3 at 4), "were effectively time-limited as they were limited to evidence relating to the" specific crimes. *Pinto-Thomaz*, 352 F. Supp. 3d at 306. "There was no need for an explicit time limit as the subject matter limitations on seizure effectively limited the time frame concerned." *Id.* at 307.

### 2.   Materials Relating to Other Minors.

The October Warrant also authorized a search for "[c]ommunications with minors, including MV1[,]" and "[i]mages or videos depicting [Defendant.]" (Doc. 60-3 at 4.) The government argues that because Defendant allegedly lied about his relationship with MV1, there was "probable cause to include a search for items that might provide background for understanding his intent and actions in his relationship with MV1, i.e.[,] his parallel criminal actions to entice or travel to have sex with other minors." (Doc. 72 at 8.) Whether the October Warrant should have included a time restriction on these categories of evidence is a much closer question. However, if the good faith exception applies, this potential deficiency in the October Warrant does not require suppression.

Under the good faith exception, "suppression is 'our last resort, not our first impulse[,]' in dealing with violations of the Fourth Amendment." *United States v. Clark*, 638 F.3d 89, 99 (2d Cir. 2011) (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)). For that reason, "the exclusionary rule barring illegally obtained evidence from the courtroom does not apply to evidence seized 'in objectively reasonable reliance on' a

15

warrant issued by a detached and neutral . . . judge, even where the warrant is subsequently deemed invalid." *United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)).

"When an officer genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment, 'and thus nothing to deter.'" *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (quoting *Leon*, 468 U.S. at 920-21). "[T]he good faith exception requires a sincerely held and objectively reasonable belief that the warrant is based on a valid application of the law to all the known facts." *United States v. Reilly*, 76 F.3d 1271, 1273 (2d Cir. 1996), *aff'd and amended*, 91 F.3d 331 (2d Cir. 1996) (per curiam). "Good faith is not a blanket excuse for any police behavior. A warrant is not a general hunting license, nor is it a mantle of omnipotence[.]" *Id.* The good faith exception does not apply:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Clark*, 638 F.3d at 100 (quoting *United States v. Moore*, 968 F.2d 216, 222 (2d Cir. 1992)).

Courts in the Second Circuit have applied the good faith exception to search warrants of cell phones that authorized searches into broad categories of evidence without a temporal limitation. *See, e.g., United States v. Stacy*, 802 F. App'x 611, 614 (2d Cir. 2020) (applying good faith exception to cell phone warrant despite finding it insufficiently particular with respect to the evidence to be seized); *Hernandez*, 2010 WL 26544, at * 12 (concluding that "although the search warrant included fairly broad categories and lacked any express time frame limitation, it is by no means 'so facially deficient' as to render reliance unreasonable[]"); *United States v. Johnson*, 2021 WL 2667168, at *4 (D. Vt. June 29, 2021) ("With the location and the offense conduct clearly identified, there is no constitutional requirement that the time of possession be limited to the two months when defendant was known to participate in the [] chat space.").

16

In the course of executing the October Warrant, when law enforcement encountered what was believed to be CSAM, officers ceased searching for further CSAM and obtained a second search warrant for the Cell Phone. This is exactly what good faith requires. There are also no allegations that the magistrate judge abandoned his or her role, nor was the warrant so lacking in indicia of probable cause or facially deficient that any reasonable law enforcement officer would have known it was invalid. Although Special Agent Ward's affidavit described the seizure of the Cell Phone as "incident to arrest[,]" (Doc. 60-1 at 9, ¶ 10), there is no allegation or evidence that his statement was made with "reckless disregard of the truth." *Leon*, 468 U.S. at 923 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). Instead, it is accurate that it was seized concomitantly with Defendant's arrest; its seizure was not, however, justified on that basis.

Whether the October Warrant should have permitted a search for other evidence related to the luring of minors without a temporal limitation is the type of close call for which the good faith exception was crafted. The application of the exclusionary rule in this case would have no deterrent effect because there was no bad faith to deter. As a result, any potential deficiencies in the October Warrant do not warrant the "last resort" of suppression, and the good faith exception applies. *See Herring*, 555 U.S. at 140.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion to suppress evidence. (Doc. 60.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this _3rd_ day of April, 2026.

Christina Reiss, Chief Judge
United States District Court

17